The fourth district appellate court of the state of Illinois has now convened the Honorable Peter C. Kavanaugh presiding. Good afternoon. We'll first call case 4-19-0538. People, the state of Illinois appellee versus Giulio, pardon me, Julius O. Scott appellant. Counsel for the appellant, please state your name for the record. Edward J. Wittrig on behalf of the appellant and for the appellee, Brittany, wait for the people of the state of Illinois. Very well. Counseling may proceed. Thank you, Your Honor. Your honors may have pleased the court counsel. My name is Edward Wittrig. I'm with the office of the state appellate defender. I represent the petitioner appellant Mr Julius Scott on this appeal. In his opening brief, Mr. Scott raised two points. First, that he was denied a fair trial and the circuit court barred critical testimony from his defense witness, Mr. Kendall Martin, on Mr. Scott's full defense against the charges of aggravated criminal sexual abuse, the defense being that Mr. Scott reasonably believed that DH was at least 17 years of age during their consensual sexual encounter. Second, Mr. Scott raised that he was denied a fair trial, was a prosecutor and properly bolstered DH's credibility during the trial. Regarding the first point that Mr. Scott raised in his opening brief, Mr. Martin was prepared to testify that he overheard a discussion at the club between Mr. Scott and DH. Now, in that discussion, DH told Mr. Scott that she was 18, denied that she was 16, and stated that his accusation that she was 16 was wrong. The circuit court, in considering this proposed testimony, primarily excluded Mr. Martin's planned testimony as hearsay. Now, crucially, the circuit court's conclusion was wrong as a matter of law. On this point, Illinois law is clear. Testimony or other evidence about out-of-court statements is not inadmissible when it's only being used to prove that the statement was made. Mr. Rittrig, I have a question for you with respect to this statement. I know that at the trial court, counsel for the defendant made some representations to the court regarding what the testimony would be, but I don't see in the record, and I wanted to confirm with you, that there was any offer of proof where Mr. Martin was actually placed on the stand and the trial court was actually allowed to hear the actual testimony that he would have been offering? Your Honor, there was not a formal offer of proof where Mr. Martin actually testified under oath. However, the state, when the state brought this up, they summarized Mr. Martin's proposed testimony. Defense counsel provided even more detail about defense counsel's testimony. The state had no objection that this is what Mr. Martin's testimony would actually be. The circuit court also did not object that, excuse me, require any more explanation from defense counsel and seem to accept that this representation was sufficient for an offer of proof. Mr. Rittrig, are you suggesting that the party stipulated to the testimony what the testimony would be? Although there was no formal representation, in essence, that's what happened when both the state and defense counsel agreed that this is what Mr. Martin's testimony would be. One reason that I ask is because when Mr. Martin actually testified, his testimony didn't seem to be as strong or convincing as what perhaps defense counsel anticipated in terms of him saying, you know, I wasn't even really with them when they were discussing her age. I was playing basketball, so I didn't hear that conversation. And then we had the things come out about his relationship with the defendant. And so do you think that may have played a role or how, how do we consider that in terms of the fact that the court, you know, didn't allow it in? I understand you're saying it was not hearsay, but was it as, was it as strong a testimony as, as you seem to assert in your brief? Yes, Your Honor. I believe it is. Now, I think here, defense counsel is representing that Mr. Martin made these statements after it appears from the record had just disclosed this testimony to defense counsel and the state. And so I think there's, there's two different aspects to Mr. Martin's testimony. First, that at one point he saw a photograph being distributed and he may not have had very much information on, on that aspect. But the other aspect of his testimony is that he overheard later at a different point, this, this discussion between the two. And so I think there, there can be a separation between the testimony about one was not so strong. Didn't the defendant testify that he had the victim meet him at a certain location at the club and that it suggested that they were alone. I mean, in fact, he even testified that I didn't know anyone was there. The defendant testified to that. So that, that's just another, I think, factor that we need to look at in going to give the testimony that would have corroborated the defendant's defense. Well, I think that there's no dispute that he would testify to this. At least there was no dispute by the parties below. There's no dispute as to the parties on appeal either, that this was his planned testimony. And now whether or not he was in a position to overhear accurately what was being portrayed or something that would go to the, that would go to the weight that the jurors could give it rather than its admissibility. And so I think it's important that the jurors would be able to compare and contrast Mr. Martin's recollection of that discussion versus Mr. Scott's. Mr. Whitfield, before we move away from the offer of proof, let me just try to clarify. We all understand what a referred to as a formal offer of proof is, what is an informal? You seem to be implying there's an informal offer of proof. And if so, what's the authority for us considering the information you put forth on that? Uh, yes, yes, your honor. I, I relied on people, the forest now in, in the opening brief, I relied on it for a different proposition. But in that case, there is a representation made by defense council. Um, and I believe actually that the citation is, um, Illinois app fourth district one three Oh six to one. Now in that case, there was an offer of, of proof made by defense council as to what the statements would be. And this court determined that it was sufficient because the, there was at least an implicit acceptance by the, by the circuit court when it ruled on the, on the issue. And so are you suggesting that it's the obligation of the court, the trial court judge to ask for an offer of proof? No, your honor. It's not necessarily the obligation of, of the court to, to ask for, um, anything in particular, but I think here where the circuit court accepted that this is what was the proposed testimony, it's not as though it was speculative, uncertain, and then made a ruling on the merits without requiring any additional information that that's sufficient in this case. Um, besides hearsay, the grounds of hearsay, the circuit court also rejected this testimony, believing that the state could be prejudiced by having closed its case in chief without first addressing the issue. Um, first it appears that DH did address the issue. She denied that she had this conversation with Mr. Scott after November 15th. But even if she hadn't, there's no reason why the state cannot present witnesses on rebuttal. The circuit court even seemed to realize this when it stated that the state could call witnesses on rebuttal to address Mr. Scott's testimony about his argument. Well, I'm wondering as far as the other young men who were there gathered and playing basketball and who supposedly were shown, you know, this picture or whatever, how would the state have adequate time to contact, interview, and secure them as witnesses given the late disclosure? Well, it is uncertain how long a, um, a recess would be required to investigate and investigate this matter. But I think it's important here that, that Mr. Martin was disclosed as a witness a month before trial. He was subpoenaed, um, a couple weeks before trial as well. And then the subpoena lists his address. The state isn't complaining that, that Mr. Martin or they couldn't have interviewed them himself. And so, so I would, I don't think there was a discovery violation in this case. And I think the circuit court, if it would have found that this was a discovery violation and barred Mr. Martin's testimony, that that would have been abuse of discretion anyways. The circuit court's decision to exclude this testimony was important in this case. Mr. Scott's sole defense to these charges of aggravated criminal sexual abuse, especially where here he's conceding that the sexual intercourse and conduct occurred and also that DH was not of age, was that Mr. Scott had a reasonable belief that she was at least 16. This reasonable belief that she was 16 was on DH's representations as to her age. You mean reasonable belief that she was 17? Yes. Yes, Your Honor. Sorry if I missed. Okay. The sole defense was that Mr. Scott had a reasonable belief that she was at least 17. And this reasonable belief was based on the fact that she's representing to Mr. Scott that she was at least 17. And here we have a neutral third party corroborate Mr. Scott's testimony that before and after their sexual encounter, she is representing to him that she is at least of age to consent. And at the same time undermining DH's representations at trial where she is denying that she told Mr. Scott that she was 18 or made any misrepresentation about her age at all. And so the exclusion of this sole corroborating testimony to the central issue before the jurors on these charges was severely prejudicial. Counsel, I want to ask you about one of the other contentions you make on appeal, which is that you claim the prosecutor acted improperly by arguing that DH made prior consistent statements based on evidence outside of the record. If I understand you correctly, that's because of when DH was being cross examined. She was cross examined about her police interview, was she not? Yes, your honor. She was cross examined about two inconsistencies. Okay. And she was, she testified during direct examination, that detective mass interviewed her about the sexual assault and during cross examination, counsel brought out some inconsistencies with what detective mass said about that interview. Did he not? Yes, your honor. Okay. So the point I'm raising is this defense counsel was the one who brought out this interview of DH by detective mass and pointed out that there were these inconsistencies. Why would it not be reasonable for the prosecutor to argue? Well, ladies and gentlemen, the defense brought out these, this interview and pointed out these there must've been, these must've been the only ones because if there were other inconsistencies, defense counsel would have brought them out as well. What's improper about that? Your honor. It's improper because the, the consistent or the purported statement was not in evidence. And the prosecutor here is representing that there were only two inconsistencies in her prior statement. And there is, that's not a reasonable conclusion to draw from. I want to go back to the point I just made, uh, the phrasing I use and have you address that prosecutor can argue all the facts and evidence. Any attorney can argue all the facts and evidence as well as reasonable inferences to be drawn there from why isn't it a reasonable inference for the prosecutor to argue to the jury that if there were other inconsistencies in DHS statements of detective mass, uh, that, uh, the defense counsel would have brought them out like he brought out these two. Because there are many reasons why defense counsel would not impeach with a prior inconsistent statement, even if it was available. And so the fact that, well, give me an example. I'm a prospective juror. Let's say what, uh, explanation do you provide for why having brought up two inconsistencies of the age with her interview with mass defense counsel, we're going to brought up any others if they exist. Well, for instance, maybe a prior inconsistency contained more harmful allegations. And so defense counsel wouldn't want to bring that into evidence and particularly, um, have the jurors fixate on that or, or turn them against Mr. Scott, or maybe the defense counsel wouldn't want to, um, distract the jurors. If some of these inconsistencies are very low relevant and it would take them away from considering the main issues at trial. Well, even, even if that were somehow a colorable explanation, which I frankly doubt, why would that, uh, the track from the reasonableness? Why would it make unreasonable the prosecutor arguing to the jury that you may infer there were no more inconsistencies? What, how does that become unreasonable? An unreasonable inference to suggest to the jury to draw so that you're arguing that he's arguing matters not in evidence. And, and your honor, my answer to that is that it's just because of the fact that there are many different reasons why defense counsel would not be able to, um, impeach with a prior inconsistent statement. And so there can be no inference. My position here is that there are. Uh, regarding the other points about prosecutorial, um, the prosecutor's conduct during, during the trial, the prosecutor did, um, vouch for DHS testimony when it declared, I felt like she's being exceptionally truthful on the stand under Illinois law. And in particular, the bullying decision rendered by this court in 2014 and cited in the briefs, this was clear error by the prosecutor. Mr. Whitrick, but also under Illinois law, don't we have to look at the entire statement and not simply pick out certain little snippets? I mean, you literally have in this situation, one statement like that. I mean, it is not throughout opening statement or the closing argument. I mean, there's one reference. Well, your honor, I would argue that, that the context here is, is the context here of that statement makes it even, even more harmful. The prosecutor clearly had concerns about DHS demeanor on, on the, on the stand as, as explained in an opening argument and jury selection, there was some concerns that her demeanor might, might detract from her believability. And so the prosecutor then here is summing up his recollection of her, um, demeanor and how she acted, and then is telling the jurors as a, as a prosecutor here that he finds it, he found her testimony extremely truthful. And so I think considering the context and the entirety of the arguments, it is very harmful under the circumstances of this case, especially where, as in here, that this is a quintessential credibility contest between DH and, um, Mr. Scott on her representations as to her age. Overall, this was a case that revolved around DH's testimony versus Mr. Scott's testimony, as I said, about her representations to her age. In that process, the prosecutor through improper means enhanced DH's credibility and testimony. At the same time, Mr. Scott was stripped of the ability to corroborate his testimony and, um, theory of events before the jurors through his only other witness. In this way, Mr. Scott was denied a fair trial and an opportunity to defend himself against these charges. If there are no other questions, then Mr. Scott would ask that this court reverse and remand for a new trial. Thank you for the appellee, Ms. Whitfield, if you would please proceed. May it please the court, counsel. My name is Brittany Whitfield, and I'm appearing on behalf of the appellee people for the state of Illinois. I'm pleased to be here as this is my first appearance at oral argument before this court. Welcome. Your honors, two issues are presented for this appeal. Um, one, whether defendants witnesses testimony was erroneously excluded as hearsay and two, whether closing arguments were improperly used by the state to personally vouch for DH's credibility or voir dire was used to bolster her credibility. Um, the state maintains that these issues were not properly preserved for appeal and are therefore forfeited, but not to waste too much of the procedural defects in time of this court and moving beyond that, your honors. Essentially, these arguments lack merit and I'm not supported by the record or the objectives and practice of litigation. Taking the issue with Martin's testimonies exclusion. Um, the state formally rested its case in chief when jury resumed on the third day of trial that supported by the record on sub R page 34. And beyond that, before the jury was called back in, there was an entire discussion on the record about Martin's proposed testimony, where both parties were available to argue when the state brought up. We believe that the conversation that Martin possibly overheard between DH and defendant should be excluded. And the defense counsel did not respond in a way that affirmed or denied the context of what that conversation entailed. Instead, defense counsel kind of conceded that that conversation topic was needed to be discussed, that Martin needed to be allowed to present that he overheard a conversation between DH and defendant. But when we actually have Martin on the stand, we see that Martin can say that he recognized DH from the neighborhood, that he dated one of DH's friends. But when asked who was the girl in the photograph, the one that defendant showed the other boys, Martin's testimony explicitly stated, I can't recall the name of the girl. Martin was not going to be a reliable witness. And the judge, using his discretion, decided to keep that portion of the testimony outside. Ms. Whitfield? Yes. But was it hearsay? Your honors, looking at hearsay, just in general, this was an out of court statement made by someone other than the declarant offered to prove the truth of the matter asserted. And that's what we need to stop. Was it being offered to prove the truth of the matter asserted? The matter asserted was, she told him, she said, I'm 17. Were they offering it to prove that she was 17? Or were they offering it to prove that she said that to him, and he thought she was 17? I believe it's the second, your honor. That would not be hearsay then? Perhaps. I interpreted it to mean the reasonable belief portion. And so I believed, and the state believes, that it was being offered to prove the truth of the matter that defendant reasonably believed that DH was 17 years old. Was that the matter asserted? Is that what the person who was speaking, is that what she asserted, that you're reasonable in believing that I'm 17? Nobody asserted that. What was asserted was, allegedly, I'm 17. I'm 17 going on 18. That's what was supposedly asserted, right? I understand, your honor. And beyond that, even if that was, even if this was not a hearsay violation or a hearsay excluded testimony, we still find further support in the record that there were reliability issues in Martin's proposed testimony to begin with. So perhaps the trial judge may have erroneously excluded this testimony on hearsay grounds. But when we look at the record in its entirety, we recognize that there were other very viable reasons why this testimony should not have been allowed to come in. And some of those reasons being that Martin, not being a mutual third party, but being a friend of defendant, called or brought to the attention of the court a month prior from trial and not being located until two weeks prior to trial and served a subpoena, was coming in with this testimony about a conversation he overheard, another adult, against a child witness. And it's just a lot of other issues with this case that keeps it from being a substantially prejudicial move for the court to have denied the inclusion of that statement from Martin. And additionally, the trial court provided a safeguard. If this were a critical issue that defendant wanted to bring forward, the trial court explained that the defendant could present that argument in his own testimony, and then DH could be called for true rebuttal. That option was not taken by defense counsel in this case. Defense counsel, with his own witness, did not pry into that conversation, and DH was, in fact, not called for true rebuttal. So the state, I thought, I thought, I'm sorry, I thought defense counsel did ask the defendant about her age and the fact that, yeah, defense counsel did, because that's when the defendant said that they were there alone at the club and that, you know, he had asked her to come and that she said that she was 17 going on 18. But I think you are right that the state did not recall her on rebuttal regarding that. Yes, Your Honor, I misspoke. The defendant was questioned about the age he perceived DH to be, but the state still did not call DH as a true rebuttal witness. So moving to the next issue then, Your Honors, there's the closing argument issue. It's well established in this court that prosecutors are granted wide latitude during closing arguments, and that closing arguments are viewed in their entirety in context when there are potentially challenged remarks. And in this case, what we see is that the defense counsel explicitly called DH a liar, and the state responded. The Supreme Court of Illinois has long held that prosecutors may respond to comments by defense counsel, which clearly invite a response. And as this court understands, trying felony cases before jury ain't beanbag. And there's expectation that advocates in our adversary system of justice use all of their forensic skills to persuade the jury of the wisdom and just or justice of their respective positions. Put more simply and taken from a recent case, people will be kneel of this court. If one side called the other side a liar, it is perfectly within the bounds of proper argument to bluntly respond. And that's exactly what happened here. Defense counsel, and just quoting them loosely, stated during their closing argument, we know that DH was not being truthful. We know that she was infatuated with defendant. DH liked defendant, and we know she lied about that. When looking at her credibility, you know for a fact she lied to you about their whole relationship. The state in rebuttal can and should challenge that narrative. Ms. McField, I want to ask you something about that. But isn't there a difference between properly responding by saying that, you know, we disagree, the evidence demonstrates that she was truthful versus what we had here where you have the prosecutor saying, I think she was being honest. I think she was truthful. So the prosecutor is inserting himself into it versus just responding to the allegations made by defense counsel. Isn't there a difference? Your Honor, I think that this is sticky water where during the passion of trial and trying to close your case out, sometimes people are going to misspeak. I've even misspoken today here in front of you all. And I don't think that what happened in this case was the state personally using their influence as the state to carry the weight of DH's credibility here. The safeguards that this court has in place protect from the state using its position as the state to unduly influence the jury or to strip their determinations as trier's effect. And we have one comment, one fleeting comment here. I think she was being exceptionally truthful. I think there are better ways to maybe portray that. But just thinking about how things are stated and kind of moving through swiftly, maybe it was a slight misspoke, misspeak, but perhaps it was not so influential that the whole force of the state was behind it. Moving forward to the issues with Vordeer that defense counsel brings in. What happened during Vordeer is nothing like the case that defendant cites to. In the case that defendant cites to, people being veiled, there was an issue where defendant murdered his parents. And during Vordeer, counsel asked whether they believe somebody could or plan to murder their family. Here we have a Colorado mass shooting being used as an example. And more importantly, what was being kept in mind by that the state wanted to be kept in mind was that people could respond differently to the same event. Even during their presentation of the Colorado mass shooting, the state went on to explain that they were inquiring about the responses that people had in that situation and went on to present three different scenarios and polled the jury about what they would have done in that situation. Would they have fleed, fought, fled, or done something different? Or did they not even think about it at all? So just dealing with that challenge remark during Vordeer, this is nothing like people be veiled. And lastly, dealing with the statements outside of the record. The record contains, as this court has pointed out, that D.H. was questioned about her interview with Detective Mace and so was Detective Mace about two particular inconsistencies, those of which the state mentioned during closing as well. If there are no further questions from me, I would like to conclude my argument by saying that for the foregoing reasons, the state respectfully requests that this court find in favor of the appellee and affirm the rulings of the trial court. Thank you, Ms. Whitfield. Mr. Whitley, pardon me. Thank you, Your Honor. I would first like to respond to this issue about the circuit court having other grounds to exclude Mr. Martin's testimony here, that the circuit court didn't exclude it because it was unreliable. The circuit court specifically excluded it because it believed it was hearsay. If we find that the circuit court had a basis to exclude it, does it matter if the court didn't do it for that reason? A judgment can be affirmed on other grounds, but I think it's important here where the perceived inconsistencies between Mr. Scott's and Mr. Martin's testimony about this event are not so significant. Mr. Martin's testimony is not so unreliable. There's no reason for him to be able to pinpoint the exact date this occurred because he's not an invested party like Mr. Scott would be, who might have a more accurate recollection of the specific date that this occurred. I think the fact that there are some inconsistencies and some vagaries to Mr. Martin's testimony actually makes it more compelling. It shows that this wasn't rehearsed or planned in any way. I think that it would be really important for the jurors to be able to make these determinations as to credibility of Mr. Martin and Mr. Scott and D.H. rather than the circuit court doing it for them. I have two questions about the board. First, am I correct that at no time did the defendant object to any of the references that the jury provided? You have a panel before you of people who are former trial judges and we have well over 20 years experience as trial judges and it's a very difficult thing for a trial judge to sue a spot. They step in and say, counsel, where are you going with this? This doesn't seem to make any sense or have any connection to this case. It's a lot easier to raise that question if someone is objective. Are you claiming that somehow this voir dire examination constituted plain error? Yes, your honor. I understand your point. It would be difficult for a circuit court to sue a spot and jump in. I think here where the reference is to a notorious and horrific mass shooting that occurred in Colorado in 2012, that at least should have alerted the circuit court that this could be potentially problematic. Here it was. The prosecutor was informing the jurors, not just to keep this example in mind, but to keep their responses in mind when they were listening to potential testimony. And so the response is to being a victim. And so this not only... Go ahead. If you have time, go ahead. Oh, sorry, your honor. Envisioning themselves as though they were a victim during DH's testimony in particular, we would also invite them to identify with her in this case as against Mr. Scott. And so the prosecutor asking them to keep this very charged event in their mind was not fair and has no place in this trial. My other question concerns the closing argument. I think it's clear that the prosecutor should not have used the term I. Prosecutors should never should do that when what they believe and what I think and all the rest of that. But that's a rule which applies both ways, doesn't it? To defense attorney as well. And didn't the defense attorney in his closing argument violate that rule with his first person statement that we know she's not telling the truth? No, your honor. This court has drawn that distinction in people v. bullying that we know is a far cry, I believe is the terminology, a far cry from I know. And so this court has drawn that distinction before. Well. Why isn't it something where he's speaking with the week could be the royal way or could be you? I know and you know, ladies and gentlemen, the jury, she's not telling the truth. Isn't that what he's saying? I mean, we could could could be. I it's my position here that by saying we he's referring to the juror, the members of the juror, and he's not actually there would be, you know, she's not telling the truth. We includes him, the speaker, doesn't it? To clarify, it was a she though. It wasn't a he. I'm sorry. Thank you. Well, the reason I mentioned that is assuming and I do, it's always wrong for the prosecutor to use the first person himself. Isn't it less bothersome or more understandable when it's in response to the defense attorney who's done it? And your honor, my time has run out. Can I respond to your question? You may respond Justice Steinman's question. Thank you. All right. Thank you. Um, my position is no. If the prosecutor is personally vouching, it doesn't matter whether or not the defense counsel used we or or just or you. In that instance, the defense counsel did not. She did not represent a personal belief. And by saving, it doesn't go nearly as far as I so. Thank you, Mr. Wittrig. On behalf of the court and Mr. Wittrig, I'd like to welcome you to the bar. Council Miss Whitfield congratulate you. You're a colleague of ours now. And with that said, thank you both for excellent argument. The sport will take the matter on advisement and we will stand at this time and recess. Thank you.